Evan J. Smith
BRODSKY & SMITH
240 Mineola Boulevard
First Floor
Mineola, NY 11501
Telephone:     516.741.4977
Facsimile:     516.741.0626
esmith@brodskysmith.com

*Attorneys for Plaintiff*

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| PHUONG HOLLY LE,<br><br>                        Plaintiff,<br><br>vs.<br><br>GCP APPLIED TECHNOLOGIES INC., PETER A. FELD, SIMON BATES, JANET P. GIESSELMAN, CLAY KIEFABER, ARMAND F. LAUZON, MARRAN OGILVIE, ANDREW M. ROSS, LINDA J. WELTY, and ROBERT H. YANKER,<br><br>                        Defendants. | Case No.:<br><br>**Complaint For:**<br><br>(1) Breach of Fiduciary Duties<br>(2) Aiding and Abetting Breach of Fiduciary Duties<br>(3) Violation of § 14 (a) of the Securities Exchange Act of 1934<br>(4) Violation of § 20(a) of the Securities Exchange Act of 1934<br><br>**JURY TRIAL DEMANDED** |

Plaintiff, Phuong Holly Le ("Plaintiff"), by and through her attorneys, alleges upon information and belief, except for those allegations that pertain to her, which are alleged upon personal knowledge, as follows:

## SUMMARY OF THE ACTION

1.     Plaintiff brings this stockholder action against GCP Applied Technologies Inc., ("GCP" or the "Company") and the Company's Board of Directors (the "Board" or the "Individual Defendants," and collectively with the Company, the "Defendants"), for breaches of fiduciary duty and violations of Sections 14(a) and 20(a) of the Securities and Exchange Act of 1934 (the "Exchange Act") as a result of Defendants' efforts to sell the Company to Compagnie de Saint-

Gobain S.A., through a merger with Cyclades Parent, Inc., and merger vehicle Cyclades Merger Sub. ("Merger Sub" and collectively with Parent, "Saint Gobain") as a result of an unfair process and for an unfair price, and to enjoin an upcoming stockholder vote on a proposed all cash transaction (the "Proposed Transaction").

2.      The terms of the Proposed Transaction were memorialized in a December 5, 2021, filing with the Securities and Exchange Commission ("SEC") on Form 8-K attaching the definitive Agreement and Plan of Merger (the "Merger Agreement"). Under the terms of the Merger Agreement, Saint Gobain will acquire all the outstanding shares of GCP common stock for $32.00 per share in cash. As a result, GCP will become an indirect wholly-owned subsidiary of Saint Gobain.

3.      Thereafter, on January 18, 2022, GCP filed a Preliminary Proxy Statement on Form PREM14A attaching the proxy statement (the "Preliminary Proxy Statement") with the SEC in support of the Proposed Transaction.

4.      The Proposed Transaction is unfair for a number of reasons.  Significantly, the Preliminary Proxy Statement reveals insufficient information regarding whether a committee of disinterested Board members was created to run the sales process.

5.      In approving the Proposed Transaction, the Individual Defendants have breached their fiduciary duties of loyalty, good faith, due care and disclosure by, *inter alia*, (i) agreeing to sell GCP without first taking steps to ensure that Plaintiff in her capacity as a public Company stockholder would obtain adequate, fair and maximum consideration under the circumstances; and (ii) engineering the Proposed Transaction to benefit themselves and/or GCP without regard for Plaintiff in her capacity as a public Company stockholder.  Accordingly, this action seeks to enjoin the Proposed Transaction and compel the Individual Defendants to properly exercise their fiduciary duties to Plaintiff in her capacity as a public Company stockholder

6.      Furthermore, it appears as though the Board has entered into the Proposed

Transaction to procure for itself and senior management of the Company significant and immediate benefits with no thought to Plaintiff, as well as the Company's public stockholders. For instance, pursuant to the terms of the Merger Agreement, upon the consummation of the Proposed Transaction, Company Board Members and executive officers will be able to exchange all Company equity awards for the merger consideration.

7.    In violation of the Exchange Act and in further breach of their fiduciary duties, Defendants caused to be filed the materially deficient Preliminary Proxy Statement on January 18, 2022 with the SEC in an effort to Plaintiff, to vote in favor of the Proposed Transaction. The Preliminary Proxy Statement is materially deficient, deprives Plaintiff of the information necessary to make an intelligent, informed and rational decision of whether to vote in favor of the Proposed Transaction, and is thus in violation of the Exchange Act. As detailed below, the Preliminary Proxy Statement omits and/or misrepresents material information concerning, among other things: (a) the sales process and in particular certain conflicts of interest for management; (b) the financial projections for GCP, provided by GCP management to the Board and the Board's financial advisor RBC Capital Markets, LLC. ("RBCCM") and (c) the data and inputs underlying the financial valuation analyses, if any, that purport to support the fairness opinions created by RBCCM, if any, and provide to the Company and the Board.

8.    Absent judicial intervention, the Proposed Transaction will be consummated, resulting in irreparable injury to Plaintiff. This action seeks to enjoin the Proposed Transaction or, in the event the Proposed Transaction is consummated, to recover damages suffered by Plaintiff resulting from the breaches of fiduciary duties and violations of the federal securities laws by Defendants.

## PARTIES

9.      Plaintiff is a citizen of Pennsylvania and, at all times relevant hereto, has been a GCP stockholder.

10.     GCP Applied Technologies Inc. produces and sells specialty construction chemicals and specialty building materials worldwide. GCP is incorporated in Delaware and has its principal place of business at 2325 Lakeview Parkway, Alpharetta, GA 30009. Shares of GCP common stock are traded on the New York Stock Exchange ("NYSE") under the symbol "GCP".

11.     Defendant Peter A. Feld ("Feld") has been a Director of the Company at all relevant times. In addition, Feld serves as the Company's Chairman of the Board.

12.     Defendant Simon Bates ("Bates") has been a director of the Company at all relevant times. In addition, Bates serves as the Company's Chief Executive Officer ("CEO") and President.

13.     Defendant Janet P. Giesselman ("Giesselman") has been a director of the Company at all relevant times.

14.     Defendant Clay Kiefaber ("Kiefaber") has been a director of the Company at all relevant times.

15.     Defendant Armand F. Lauzon ("Lauzon") has been a director of the Company at all relevant times.

16.     Defendant Marran Ogilvie ("Ogilvie") has been a director of the Company at all relevant times.

17.     Defendant Andrew M. Ross ("Ross") has been a director of the Company at all relevant times.

18.     Defendant Linda J. Welty ("Welty") has been a director of the Company at all relevant times.

19.     Defendant Robert H. Yanker ("Yanker") has been a director of the Company at all relevant times.

20.     Defendants identified in ¶¶ 11 - 19 are collectively referred to as the "Individual Defendants."

21.     Non-Party Compagnie de Saint-Gobain S.A. designs, manufactures, and distributes materials and solutions for wellbeing worldwide. The company is incorporated in, and has its headquarters in Courbevoie, France.

22.     Non-Party Merger Sub is a wholly owned subsidiary of Saint Gobain created to effectuate the Proposed Transaction.

## JURISDICTION AND VENUE

23.     This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Sections 14(a) and 20(a) of the Exchange Act.  This action is not a collusive one to confer jurisdiction on a court of the United States, which it would not otherwise have.  The Court has supplemental jurisdiction over any claims arising under state law pursuant to 28 U.S.C. § 1367.

24.     Personal jurisdiction exists over each defendant either because the defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over defendant by this Court permissible under traditional notions of fair play and substantial justice.

25.     Venue is proper in this District pursuant to 28 U.S.C. § 1391, because each of the Individual Defendants, as Company officers or directors, has extensive contacts within this District; for example, the Company's stock trades on the NYSE which is headquartered in this District.

## THE INDIVIDUAL DEFENDANTS' FIDUCIARY DUTIES

26.     By reason of the Individual Defendants' positions with the Company as officers and/or directors, said individuals are in a fiduciary relationship with GCP and owe the public stockholders of the Company, including Plaintiff, the duties of due care, loyalty, and good faith.

27.     By virtue of their positions as directors and/or officers of GCP, the Individual Defendants, at all relevant times, had the power to control and influence, and did control and influence and cause GCP to engage in the practices complained of herein.

28.     Each of the Individual Defendants are required to act with due care, loyalty, good faith and in the best interests of the Company public stockholders including Plaintiff. To diligently comply with these duties, directors of a corporation must:

    a.  act with the requisite diligence and due care that is reasonable under the circumstances;

    b.  act in the best interest of the Company and its public stockholders, including Plaintiff;

    c.  use reasonable means to obtain material information relating to a given action or decision;

    d.  refrain from acts involving conflicts of interest between the fulfillment of their roles in the Company and the fulfillment of any other roles or their personal affairs;

    e.  avoid competing against the company or exploiting any business opportunities of the company for their own benefit, or the benefit of others; and

    f.  disclose to the Company all information and documents relating to the company's affairs that they received by virtue of their positions in the Company.

29.     In accordance with their duties of loyalty and good faith, the Individual Defendants, as directors and/or officers of GCP, are obligated to refrain from:

a.      participating in any transaction where the directors' or officers' loyalties are divided;

b.      participating in any transaction where the directors or officers are entitled to receive personal financial benefit not equally shared by the Company or its public stockholders including Plaintiff; and/or

c.      unjustly enriching themselves at the expense or to the detriment of the Company or its stockholders including Plaintiff.

30.      Plaintiff alleges herein that the Individual Defendants, separately and together, in connection with the Proposed Transaction, violated, and are violating, the fiduciary duties they owe to Plaintiff as a public stockholder of GCP, including their duties of loyalty, good faith, and due care.

31.      As a result of the Individual Defendants' divided loyalties, Plaintiff will not receive adequate, fair or maximum value for her GCP common stock in the Proposed Transaction.

## SUBSTANTIVE ALLEGATIONS

### *Company Background*

32.      GCP Applied Technologies Inc. produces and sells specialty construction chemicals and specialty building materials worldwide. Its Specialty Construction Chemicals segment offers concrete admixtures under various brands; admixtures for decorative concrete under the PIERI brand; concrete production management and control systems under the VERIFI brand; engineered concrete slab systems under the Ductilcrete brand; and cement additives. The company's Specialty Building Materials segment provides building envelope products to protect structures from water, and manages air and vapor transmission through building walls under the various brands; and residential building products comprising specialty roofing membranes and flexible flashings under the Ice & Water Shield, Tri-Flex, Ultra, and Vycor brands. This segment also offers fire protection products under the Monokote brand; chemical grouts for repair and

remediation in waterproofing and soil stabilization applications under the De Neef, Hydro Active, Swellseal, and DE NEEF PURe brands; cementitious grouts and mortars for under filling and gap filling purposes under the Betec brand; and specialty flooring products, such as flooring moisture barriers and installation products under the Kovara and Orcon brands. The company was incorporated in 2015 and is headquartered in Alpharetta, Georgia.

33.    The Company's most recent financial performance press release, revealing financial results from the quarter preceding the announcement of the Proposed Transaction, indicated impressive financial success.  For example, in the November 3, 2021 press release announcing its 2021 Q3 financial results, the Company reported Net sales of $249.6 million, an increase of 0.5%, and general and administrative expenses of $59.2 million, a decrease of 8.5%.

34.    Speaking on the results, CEO Defendant Bates said, "Demand was in line with forecast across both our business segments during the third quarter 2021 despite impacts in certain geographies due to intermittent pandemic restrictions and supply chain disruptions. During the quarter we improved average selling price, lowered selling, general and administrative costs, and we continued to drive productivity improvements in our operations," commented Bates. "Looking into 2022 we will continue to focus on repositioning the business for growth through the combination of organizational capability and customer focus, coupled with strategic use of our strong balance sheet, including M&A," Bates concluded.

35.    The sustained financial success and impressive results are not an anomaly, but rather, are indicative of a trend of continued future potential success by GCP.  Clearly, based upon the positive outlook, the Company is likely to have tremendous future success.

36.    Despite this upward trajectory, the Individual Defendants have caused GCP to enter into the Proposed Transaction without providing requisite information to GCP stockholders such as Plaintiff.

*The Flawed Sales Process*

37.     As detailed in the Preliminary Proxy Statement, the process deployed by the Individual Defendants was flawed and inadequate, was conducted out of the self-interest of the Individual Defendants and was designed with only one concern in mind – to effectuate a sale of the Company by any means possible.

38.     Notably, the Preliminary Proxy Statement fails to indicate if a committee of disinterested and independent Board members was created to run the sales process.

39.     Moreover, the Preliminary Proxy Statement fails to indicate if a market check for potentially interested third parties was conducted upon the restart of the sales process in November of 2020, or if the Company simply relied on the earlier market check conducted in early 2019 prior to the election of a majority of new directors in May 28, 2020.

40.     In addition, the Preliminary Proxy Statement is silent as to the nature of the confidentiality agreement entered into between the Company and Saint Gobain, whether this agreement differed from any other agreement with potentially interested third parties not specifically mentioned by the Preliminary Proxy Statement, if so in all specific manners, including all specific terms of any such included "don't-ask, don't-waive" provisions or standstill provisions contained therein, including, all specific conditions, if any, under which such provisions would fall away.

41.     It is not surprising, given this background to the overall sales process, that it was conducted in an inappropriate and misleading manner.

*The Proposed Transaction*

42.     On December 6, 2021, GCP and Saint Gobain issued a joint press release announcing the Proposed Transaction.  The press release stated, in relevant part:

**ALPHARETTA, Ga., Dec. 06, 2021 (GLOBE NEWSWIRE) --** GCP Applied Technologies Inc. (NYSE: GCP) (GCP or the Company), today announced that it

has entered into a definitive agreement pursuant to which Saint-Gobain will acquire all of the outstanding shares of GCP Applied Technologies for $32.00 per share, in cash, in a transaction valued at approximately $2.3 billion (approximately €2.0 billion).

The agreed upon price represents a premium of 39% above the volume-weighted average price per GCP share for the 30-trading days ended on the undisturbed date of November 30, 2021. The business combination has been unanimously approved by the Boards of Directors of Saint-Gobain and GCP Applied Technologies respectively. Saint-Gobain has obtained undertakings from Starboard and Standard Investments (formerly known as 40 North) / Standard Industries to vote their respective stakes of 8.9% and 24.2% in favor of the transaction.

Closing of the transaction is subject to GCP Applied Technologies shareholders' approval, antitrust approvals and satisfaction of other customary closing conditions with closing expected in the second half of 2022.

***Simon Bates, President and Chief Executive Officer of GCP, commented:***
"Today opens an exciting new era in GCP's rich history, for our shareholders, customers and employees. We are thrilled for GCP to join Saint-Gobain, the ideal strategic partner to support our growth. Thanks to its global platform, significant resources as well as commercial and innovation expertise, Saint-Gobain is perfectly positioned to ensure the success of GCP's operations and people over the long term."

***Peter Feld, Independent Chair of the Board of GCP, added:***
"The Board of GCP is unanimously supportive of this transaction and believes it provides full and fair value to all shareholders of GCP. Saint-Gobain represents a great partner for GCP and we are pleased to have reached this agreement. The Board would like to thank our leadership team and our dedicated employees for their significant contributions to GCP. These efforts have allowed us to achieve this great result."

***Benoit Bazin, Chief Executive Officer of Saint-Gobain, commented:***
"The acquisition of GCP is an excellent and significant step for Saint-Gobain to further reinforce its worldwide leadership in construction chemicals and strengthen its geographic presence in North America and emerging markets, both objectives being at the core of our "Grow & Impact" strategic plan. We are very happy and truly excited to welcome into Saint-Gobain the GCP teams, with whom we share the same industrial and commercial culture. Given GCP's leadership in its sector with well-recognized brands, expertise, know-how and businesses that are highly complementary with Chryso and CertainTeed, we are convinced that this great combination will create a very strong platform, with improved reach, value added solutions and services delivered to our customers. Leveraging Saint-Gobain's scale and innovation capabilities, with GCP's attractive geographic footprint, this transaction will result in enhanced profitable growth and value creation for our

shareholders and will provide attractive development opportunities for both teams around the world."

RBC Capital Markets, LLC is acting as financial advisor, and Latham & Watkins LLP is acting as legal counsel to GCP in connection with the transaction.

### The Inadequate Merger Consideration

43.     Significantly, the Company's financial prospects, opportunities for future growth, and investment in innovation establish the inadequacy of the merger consideration.

44.     First, the compensation afforded under the Proposed Transaction to Company stockholders significantly undervalues the Company.  The proposed valuation does not adequately reflect the intrinsic value of the Company.

45.     Moreover, post-closure, Plaintiff will be frozen out of her ownership interest in the Company and will not be able to reap the rewards of the Company's future prospects.

46.     It is clear from these statements and the facts set forth herein that this deal is designed to maximize benefits for Saint Gobain at the expense of GCP stockholders, including specifically Plaintiff, which clearly indicates that Plaintiff in his capacity as a GCP stockholder was not an overriding concern in the formation of the Proposed Transaction

### Preclusive Deal Mechanisms

47.     The Merger Agreement contains certain provisions that unduly benefit Saint Gobain by making an alternative transaction either prohibitively expensive or otherwise impossible.  Significantly, the Merger Agreement contains a termination fee provision that is especially onerous and impermissible.  Notably, in the event of termination, the merger agreement requires GCP to pay up to $71 million to Saint Gobain, if the Merger Agreement is terminated under certain circumstances.  Moreover, under one circumstance, CGP must pay this termination fee even if it consummates any competing Acquisition Proposal (as defined in the Merger Agreement) *within 9 months following the termination* of the Merger Agreement.  The termination

fee will make the Company that much more expensive to acquire for potential purchasers. The termination fee in combination with other preclusive deal protection devices will all but ensure that no competing offer will be forthcoming.

48.     The Merger Agreement also contains a "No Solicitation" provision that restricts GCP from considering alternative acquisition proposals by, *inter alia*, constraining GCP's ability to solicit or communicate with potential acquirers or consider their proposals. Specifically, the provision prohibits the Company from directly or indirectly soliciting, initiating, proposing or inducing any alternative proposal, but permits the Board to consider an unsolicited bona fide acquisition proposal if it constitutes or is reasonably calculated to lead to a "*Superior Proposal*" as defined in the Merger Agreement.

49.     Moreover, the Merger Agreement further reduces the possibility of a topping offer from an unsolicited purchaser. Here, the Individual Defendants agreed to provide Saint Gobain information in order to match any other offer, thus providing Saint Gobain access to the unsolicited bidder's financial information and giving Saint Gobain the ability to top the superior offer. Thus, a rival bidder is not likely to emerge with the cards stacked so much in favor of Saint Gobain.

50.     These provisions, individually and collectively, materially and improperly impede the Board's ability to fulfill its fiduciary duties with respect to fully and fairly investigating and pursuing other reasonable and more valuable proposals and alternatives in the best interests Plaintiff in its capacity as a public Company stockholder.

51.     Accordingly, the Company's true value is compromised by the consideration offered in the Proposed Transaction.

***Potential Conflicts of Interest***

52.     The breakdown of the benefits of the deal indicate that GCP insiders are the primary beneficiaries of the Proposed Transaction, not the Company's public stockholders such as Plaintiff.

The Board and the Company's executive officers are conflicted because they will have secured unique benefits for themselves from the Proposed Transaction not available to Plaintiff as a public stockholder of GCP.

53.     Notably, Company insiders, currently own large, illiquid portions of Company stock, which will be exchanged for the merger consideration upon the consummation of the Proposed Transaction.  However, while the Preliminary Proxy Statement provides the following information, it fails to disclose an accounting of how much merger consideration will be afforded to Company insiders as a consequence of the consummation of the Proposed Transaction and the cashing out of these amounts:

| Name and Address of Beneficial Owner[1] | Amount and Nature of Beneficial Ownership | Percent[2] |
|---|---|---|
| 5% Stockholders | | |
| Entities affiliated with Standard Investments LLC[3]<br>9 West 57th Street, 47th Floor<br>New York, NY 10019 | 17,778,352 | 24.0% |
| BlackRock, Inc.[4]<br>55 East 52nd Street<br>New York, NY 10055 | 7,928,099 | 10.7% |
| Entities affiliated with Starboard Value LP[5]<br>777 Third Avenue, 18th Floor<br>New York, NY 10017 | 6,540,000 | 8.8% |
| The Vanguard Group[6]<br>100 Vanguard Blvd.<br>Malvern, PA 19355 | 5,518,464 | 7.5% |
| Entities affiliated with GAMCO Investors, Inc[7]<br>One Corporate Center<br>Rye, NY 10580 | 4,415,846 | 6.0% |
| Directors and Named Executive Officers | | |
| Simon Bates | 154,316 | * |
| Craig Merrill | 82,445 | * |
| David Campos | 5,968 | * |
| Kevin R. Holland | 76,034 | * |
| Sherry Mennenga | 1,928 | * |
| James E. Thompson | 41,582 | * |
| Michael W. Valente | 8,327 | * |
| Peter A. Feld[8] | 13,283 | * |
| Janet Giesselman[9] | 13,857 | * |
| Clay Kiefaber[10] | 14,738 | * |
| Armand Lauzon[11] | 27,384 | * |
| Marran Ogilvie | 13,988 | * |

| | | |
|---|---|---|
| Andrew Ross | 16,055 | * |
| Linda Welty | 11,211 | * |
| Robert Yanker[12] | 55,511 | * |
| All directors and executive officers as a group | 419,806 | * |

54.     Additionally, Company insiders, currently own Company options, restricted stock units, and other equity awards, which will be exchanged for the merger consideration upon the consummation of the Proposed Transaction as follows:

| Name | Company Options (#)[1] | Company Options ($)[2] | Company RSUs (#)[3] | Company RSUs ($)[2] | Company PBUs (#)[4][5] | Company PBUs ($)[2] | Total Value ($) |
|---|---|---|---|---|---|---|---|
| **Executive Officers** | | | | | | | |
| Simon M. Bates | 388,348[6] | 4,287,362 | 22,374 | 715,968 | 32,247 | 1,031,904 | 6,035,234 |
| Craig Merrill | 16,782 | 126,029 | 9,497 | 303,904 | 18,270 | 584,640 | 1,014,573 |
| Sherry Mennenga | — | — | 7,682 | 245,824 | 5,555 | 177,760 | 423,584 |
| Robyn Hooker McCall | — | — | 2,574 | 82,368 | 2,473 | 79,136 | 161,504 |
| David Campos | — | — | 9,801 | 313,632 | 4,903 | 156,896 | 470,528 |
| Michael W. Valente | — | — | 11,664 | 373,248 | 9,619 | 307,808 | 681,056 |
| Dr. Amy Randall | — | — | 3,483 | 111,456 | 3,346 | 107,072 | 218,528 |
| James Waddell | — | — | 1,588 | 50,816 | 2,289 | 73,248 | 124,064 |
| James E. Thompson[7] | 14,089 | 34,941 | — | — | 4,829 | 154,528 | 189,469 |
| Kevin R. Holland[8] | 27,871 | 156,597 | — | — | 3,715 | 118,880 | 275,477 |
| Boudewijn Van Lent[9] | 4,405 | 6,916 | — | — | 5,262 | 168,384 | 175,300 |
| **Non-Employee Directors** | | | | | | | |
| Peter A. Feld | — | — | — | — | — | — | — |
| Janet P. Giesselman | — | — | 5,013 | 160,416 | — | — | 160,416 |
| Clay Kiefaber | — | — | 1,455 | 46,560 | — | — | 46,560 |
| Armand F. Lauzon | — | — | — | — | — | — | — |
| Marran H. Ogilvie | — | — | — | — | — | — | — |
| Andrew M. Ross | — | — | — | — | — | — | — |
| Linda J. Welty | — | — | — | — | — | — | — |
| Robert H. Yanker | — | — | 2,830 | 90,560 | — | — | 90,560 |
| Kevin Brown[10] | — | — | — | — | — | — | — |

55.     In addition, certain employment agreements with certain GCP executives, entitle such executives to severance packages should their employment be terminated under certain circumstances.  These 'golden parachute' packages are significant, and will grant each director or officer entitled to them millions of dollars, compensation not shared by Plaintiff and will be paid out as follows:

**Golden Parachute Compensation**

| Name | Cash[1] | Equity[2] | Perquisites/ Benefits[3] | Other[4] | Total |
|---|---|---|---|---|---|
| Simon M. Bates | $3,331,644 | $6,035,234 | $ 62,745 | $825,000 | $10,254,623 |
| Craig A. Merrill | $ 999,973 | $ 902,090 | $ 33,000 | $600,000 | $ 2,535,063 |
| James E. Thompson | $ 0 | $ 154,528 | $ 0 | $ 0 | $ 154,528 |
| Kevin R .Holland | $ 0 | $ 118,880 | $ 0 | $ 0 | $ 118,880 |
| Boudewijn Van Lent | $ 0 | $ 168,384 | $ 0 | $ 0 | $ 168,384 |
| Randall S. Dearth | $ 0 | $ 333,920 | $ 0 | $ 0 | $ 333,920 |
| Naren B. Srinivasan | $ 0 | $ 99,040 | $ 0 | $ 0 | $ 99,040 |

56.     The Preliminary Proxy Statement also fails to adequately disclose communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders. Communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders. This information is necessary for Plaintiff to understand potential conflicts of interest of management and the Board, as that information provides illumination concerning motivations that would prevent fiduciaries from acting solely in the best interests of the Company's stockholders.

57.     Thus, while the Proposed Transaction is not in the best interests of GCP, Plaintiff or Company stockholders, it will produce lucrative benefits for the Company's officers and directors.

***The Materially Misleading and/or Incomplete Preliminary Proxy Statement***

58.     On January 18, 2022, the GCP Board caused to be filed with the SEC a materially misleading and incomplete Preliminary Proxy Statement that, in violation the Exchange Act and in breach of their fiduciary duties, failed to provide Plaintiff in her capacity as a Company stockholder with material information and/or provides materially misleading information critical to the total mix of information available to Plaintiff concerning the financial and procedural fairness of the Proposed Transaction.

*Omissions and/or Material Misrepresentations Concerning the Sales Process leading up to the Proposed Transaction*

59.     Specifically, the Preliminary Proxy Statement fails to disclose material information concerning the process conducted by the Company and the events leading up to the Proposed Transaction.  In particular, the Preliminary Proxy Statement fails to disclose:

    a.   Whether a committee composed of disinterested and independent Board members was created to run the sales process, and if not, the reasoning as to that decision;

    b.   Information as to whether a market check for potentially interested counterparties was performed after the sales process was restarted in November 2020, and if not, the reasoning as to that decision;

    c.   Whether the confidentiality agreements entered into by the Company with Saint Gobain differed from any other unnamed confidentiality agreement entered into between the Company and potentially interested third parties (if any), and if so, in all specific manners;

    d.   All specific conditions under which any standstill provision contained in any entered confidentiality agreement entered into between the Company and potentially interested third parties throughout the sales process, including Saint Gobain, would fall away; and

    e.   Communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders. Communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders. This information is necessary for stockholders to understand potential conflicts of interest of management and the Board, as that information provides illumination concerning motivations that would prevent fiduciaries from acting solely in the best interests of Plaintiff and Company stockholders.

*Omissions and/or Material Misrepresentations Concerning GCP's Financial Projections*

60.     The Preliminary Proxy Statement fails to provide material information concerning financial projections for GCP provided by GCP management to the Board and RBCCM and relied upon by RBCCM in its analyses.   The Preliminary Proxy Statement discloses management-prepared financial projections for the Company which are materially misleading.

61.     Notably the Preliminary Proxy Statement reveals that as part of its analyses, RBCCM, "reviewed the Management Projections (as defined below under "—*Certain Financial Projections*") and other estimates and data relating to GCP, prepared by GCP's management, which projections and other estimates and data RBCCM was directed to utilize for purposes of its analyses and opinion."

62.     Therefore, the Preliminary Proxy Statement should have, but fails to provide, certain information in the projections that GCP management provided to the Board and RBCCM. Courts have uniformly stated that "projections … are probably among the most highly-prized disclosures by investors.  Investors can come up with their own estimates of discount rates or [] market multiples.  What they cannot hope to do is replicate management's inside view of the company's prospects." *In re Netsmart Techs., Inc. S'holders Litig.*, 924 A.2d 171, 201-203 (Del. Ch. 2007)

63.     With regard to the *Management Projections* prepared by GCP Management, the Preliminary Proxy Statement fails to disclose material line items for the following metrics:

> a.  Adjusted EBIT, including all underlying necessary metrics, adjustments, including specifically: net income (loss) from continuing operations attributable to GCP shareholders and the specific adjustments made for: (i) gains and losses on sales of businesses, product lines and certain other investments; (ii) currency and other financial losses in Venezuela; (iii) costs related to legacy product, environmental and other claims; (iv) restructuring and repositioning expenses,

and asset write offs; (v) defined benefit plan costs other than service and interest costs, expected returns on plan assets and amortization of prior service costs/credits; (vi) third-party and other acquisition-related costs; (vii) other financing costs associated with the modification or extinguishment of debt; (viii) amortization of acquired inventory fair value adjustments; (ix) tax indemnification adjustments; (x) interest income, interest expense and related financing costs; (xi) income taxes; (xii) shareholder activism and other related costs; (xiii) gain on sale of corporate headquarters, net of related costs; and (xiv) certain other items that are not representative of underlying trends;

b. Adjusted EBITDA, including all underlying necessary metrics, adjustments, including specifically: the specific adjustments made for depreciation and amortization;

c. Unlevered Free Cash Flow, including all underlying necessary metrics, adjustments, including specifically: tax-adjusted EBIT, depreciation and amortization, capital expenditures, and change in net working capital based, and the specific assumptions on which each line item was based.

64. The Preliminary Proxy Statement also fails to disclose a reconciliation of all non-GAAP to GAAP metrics utilized in the projections.

65. This information is necessary to provide Plaintiff in her capacity as a Company stockholder a complete and accurate picture of the sales process and its fairness. Without this information, Plaintiff is not fully informed as to Defendants' actions, including those that may have been taken in bad faith, and cannot fairly assess the process.

66. Without accurate projection data presented in the Preliminary Proxy Statement, Plaintiff is unable to properly evaluate the Company's true worth, the accuracy of RBCCM's financial analyses, or make an informed decision whether to vote in favor of the Proposed Transaction. As such, the Board has breached their fiduciary duties and violated the Exchange Act by failing to include such information in the Preliminary Proxy Statement.

*Omissions and/or Material Misrepresentations Concerning the Financial Analyses by RBCCM*

67.     In the Preliminary Proxy Statement, RBCCM describes its fairness opinion and the various valuation analyses performed to render such opinion.  However, the descriptions fail to include necessary underlying data, support for conclusions, or the existence of, or basis for, underlying assumptions.  Without this information, one cannot replicate the analyses, confirm the valuations or evaluate the fairness opinions.

68.     With respect to definitions of terms used for all analyses, the Preliminary Proxy Statement fails to disclose the following:

    a.   The specific closing price of GCP common stock as of November 30, 2021, the day prior to press reports of the potential acquisition of GCP (the "GCP Unaffected Stock Price");

    b.   The specific closing price of the common equity of the selected U.S. public companies in the specialty and envelope building products ("S&E Building Products") and construction chemicals ("Construction Chemicals") sectors as of December 3, 2021;

    c.   The historical balance sheet data for the selected companies and GCP based on publicly available information for each company as of December 3, 2021; and

    d.   GCP's securities outstanding as of December 2, 2021.

69.     With respect to the *Selected Companies Analysis*, the Preliminary Proxy Statement fails to disclose the following:

    a.   The specific inputs and assumptions used to determine the utilized selected Enterprise Value reference range multiples of 13.0x—17.0x 2021E EBITDA and 11.5x—14.5x 2022E EBITDA.

70.     With respect to the *Selected Precedent Transactions Analysis*, the Preliminary Proxy Statement fails to disclose the following:

a. The specific inputs and assumptions used to determine the utilized selected Enterprise Value reference range multiples of 12.0x—15.0x LTM EBITDA;

b. The date on which each precedent transaction closed; and

c. The value of each precedent transaction.

71.     With respect to the *Discounted Cash Flow Analysis*, the Preliminary Proxy Statement fails to disclose the following:

a. The specific inputs and assumptions used to determine the utilized discount rate range of 10.5% - 12.5%;

b. GCP's estimated weighted average cost of capital;

c. The terminal value for GCP calculated; and

d. The specific inputs and assumptions used to determine the utilized terminal multiples ranging from 11.0x – 13.0x estimated calendar year 2025 Adjusted EBITDA.

72.     With respect to the *Trading Range Analysis for GCP*, the Preliminary Proxy Statement fails to disclose the following:

a. The identity of the analyst and/or firm that generated the utilized analyst price target.

73.     These disclosures are critical for Plaintiff to be able to make an informed decision on whether to vote in favor of the Proposed Transaction.

74.     Without the omitted information identified above, Plaintiff is missing critical information necessary to evaluate whether the proposed consideration truly maximizes her value and serves her interest as a stockholder.  Moreover, without the key financial information and related disclosures, Plaintiff cannot gauge the reliability of the fairness opinion and the Board's determination that the Proposed Transaction is in her best interests as a public GCP stockholder. As such, the Board has violated the Exchange Act by failing to include such information in the Preliminary Proxy Statement.

## FIRST COUNT

### Breach of Fiduciary Duties

### <u>(Against the Individual Defendants)</u>

75.     Plaintiff repeats all previous allegations as if set forth in full herein.

76.     The Individual Defendants have violated their fiduciary duties of care, loyalty and good faith owed to Plaintiff in her capacity as a Company public stockholder.

77.     By the acts, transactions and courses of conduct alleged herein, Defendants, individually and acting as a part of a common plan, are attempting to unfairly deprive Plaintiff of the true value of her investment in GCP.

78.     As demonstrated by the allegations above, the Individual Defendants failed to exercise the care required, and breached their duties of loyalty and good faith owed to the Plaintiff in her capacity as a Company public stockholder by entering into the Proposed Transaction through a flawed and unfair process and failing to take steps to maximize the value of the Company to Plaintiff in her capacity as a Company public stockholder.

79.     Indeed, Defendants have accepted an offer to sell GCP at a price that fails to reflect the true value of the Company, thus depriving Plaintiff in her capacity as a Company public stockholder of the reasonable, fair and adequate value of her shares.

80.     Moreover, the Individual Defendants breached their duty of due care and candor by failing to disclose to Plaintiff in her capacity as a Company public stockholder all material information necessary for it to make an informed decision on whether to vote her shares in favor of the Proposed Transaction.

81.     The Individual Defendants dominate and control the business and corporate affairs of GCP, and are in possession of private corporate information concerning GCP's assets, business

and future prospects. Thus, there exists an imbalance and disparity of knowledge and economic power between them and Plaintiff in her capacity as a Company public stockholder which makes it inherently unfair for them to benefit their own interests to the exclusion of Plaintiff.

82.     By reason of the foregoing acts, practices and course of conduct, the Individual Defendants have failed to exercise due care and diligence in the exercise of their fiduciary obligations toward Plaintiff in her capacity as a Company public stockholder.

83.     As a result of the actions of the Individual Defendants, Plaintiff in her capacity as a Company public stockholder will suffer irreparable injury in that she has not and will not receive its fair portion of the value of GCP's assets and has been and will be prevented from obtaining a fair price for her holdings of GCP common stock.

84.     Unless the Individual Defendants are enjoined by the Court, they will continue to breach their fiduciary duties owed to Plaintiff in her capacity as a Company public stockholder, all to the irreparable harm of the Plaintiff.

85.     Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury which Defendants' actions threaten to inflict.

## SECOND COUNT

### Aiding and Abetting the Board's Breaches of Fiduciary Duty

### (Against Defendant GCP)

86.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

87.     Defendants GCP, knowingly assisted the Individual Defendants' breaches of fiduciary duty in connection with the Proposed Transaction, which, without such aid, would not have occurred.

88.     As a result this conduct, Plaintiff in her capacity as a Company public stockholder will suffer irreparable injury in that she has not and will not receive her fair portion of the value of GCP's assets and has been and will be prevented from obtaining a fair price for its holdings of GCP common stock.

89.     Plaintiff has no adequate remedy at law.

## THIRD COUNT

### Violations of Section 14(a) of the Exchange Act

### (Against All Defendants)

90.     Plaintiff repeats all previous allegations as if set forth in full herein.

91.     Defendants have disseminated the Preliminary Proxy Statement with the intention of soliciting stockholders, including Plaintiff, to vote in favor of the Proposed Transaction.

92.     Section 14(a) of the Exchange Act requires full and fair disclosure in connection with the Proposed Transaction.  Specifically, Section 14(a) provides that:

> It shall be unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the [SEC] may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of her name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78*l* of this title.

93.     As such, SEC Rule 14a-9, 17 C.F.R. 240.14a-9, states the following:

> No solicitation subject to this regulation shall be made by means of any proxy statement, form of proxy, notice of meeting or other communication, written or oral, containing any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make

the statements therein not false or misleading or necessary to correct any statement in any earlier communication with respect to the solicitation of a proxy for the same meeting or subject matter which has become false or misleading.

94.    The Preliminary Proxy Statement was prepared in violation of Section 14(a) because it is materially misleading in numerous respects and omits material facts, including those set forth above.   Moreover, in the exercise of reasonable care, Defendants knew or should have known that the Preliminary Proxy Statement is materially misleading and omits material facts that are necessary to render them non-misleading.

95.    The Individual Defendants had actual knowledge or should have known of the misrepresentations and omissions of material facts set forth herein.

96.    The Individual Defendants were at least negligent in filing a Preliminary Proxy Statement that was materially misleading and/or omitted material facts necessary to make the Preliminary Proxy Statement not misleading.

97.    The misrepresentations and omissions in the Preliminary Proxy Statement are material to Plaintiff, and Plaintiff will be deprived of her entitlement to decide whether to vote her shares in favor of the Proposed Transaction on the basis of complete information if such misrepresentations and omissions are not corrected prior to the stockholder vote regarding the Proposed Transaction.

### FOURTH COUNT

### Violations of Section 20(a) of the Exchange Act

### (Against all Individual Defendants)

98.    Plaintiff repeats all previous allegations as if set forth in full herein.

99.    The Individual Defendants were privy to non-public information concerning the Company and its business and operations via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at management and Board meetings and committees thereof and via reports and other information provided to them in connection therewith.   Because of their possession of such information, the Individual Defendants

knew or should have known that the Preliminary Proxy Statement was materially misleading to Plaintiff in her capacity as a Company stockholder.

100.    The Individual Defendants were involved in drafting, producing, reviewing and/or disseminating the materially false and misleading statements complained of herein. The Individual Defendants were aware or should have been aware that materially false and misleading statements were being issued by the Company in the Preliminary Proxy Statement and nevertheless approved, ratified and/or failed to correct those statements, in violation of federal securities laws. The Individual Defendants were able to, and did, control the contents of the Preliminary Proxy Statement. The Individual Defendants were provided with copies of, reviewed and approved, and/or signed the Preliminary Proxy Statement before its issuance and had the ability or opportunity to prevent its issuance or to cause it to be corrected.

101.    The Individual Defendants also were able to, and did, directly or indirectly, control the conduct of GCP's business, the information contained in its filings with the SEC, and its public statements. Because of their positions and access to material non-public information available to them but not the public, the Individual Defendants knew or should have known that the misrepresentations specified herein had not been properly disclosed to and were being concealed from Plaintiff and Company, and that the Preliminary Proxy Statement was misleading. As a result, the Individual Defendants are responsible for the accuracy of the Preliminary Proxy Statement and are therefore responsible and liable for the misrepresentations contained herein.

102.    The Individual Defendants acted as controlling persons of GCP within the meaning of Section 20(a) of the Exchange Act. By reason of their position with the Company, the Individual Defendants had the power and authority to cause GCP to engage in the wrongful conduct complained of herein. The Individual Defendants controlled GCP and all of its employees. As alleged above, GCP is a primary violator of Section 14 of the Exchange Act and SEC Rule 14a-9. By reason of their conduct, the Individual Defendants are liable pursuant to section 20(a) of the Exchange Act.

WHEREFORE, Plaintiff demands injunctive relief, in her favor and against the Defendants, as follows:

A.     Enjoining the Proposed Transaction;

B.     In the event Defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

C.     Declaring and decreeing that the Merger Agreement was agreed to in breach of the fiduciary duties of the Individual Defendants and is therefore unlawful and unenforceable

D.     Directing the Individual Defendants to exercise their fiduciary duties and comply with the Exchange Act to disseminate a Preliminary Proxy Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

E.     Directing defendants to account to Plaintiff for damages sustained because of the wrongs complained of herein;

F.     Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

G.     Granting such other and further relief as this Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury on all issues which can be heard by a jury.

Dated: January 28, 2022                          **BRODSKY & SMITH**

By: _____
Evan J. Smith
240 Mineola Boulevard
Mineola, NY  11501
Phone:  (516) 741-4977
Facsimile (561) 741-0626

*Counsel for Plaintiff*